UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHINA SHIPPING CONTAINER LINES CO.
LTD.,

               Petitioner,

        -against-

BIG PORT SERVICE DMCC,

               Respondent.

Civil Action No. 1:15-cv-02006-AT

---

## BIG PORT SERVICE DMCC
## MEMORANDUM OPPOSING CSCL's PETITION AND MOTION
## TO "TEMPORARILY RESTRAIN AND
## PRELIMINARILY ENJOIN ARBITRATION"

This Court is without jurisdiction to order the relief that CSCL demands. The parties already (since December, 2014) have been (and continue) before the High Court of Singapore, arguing the same issues. Venue is not proper in this Court, either.

This Court therefore now should deny China Shipping Container Lines Co. Ltd.'s ("CSCL") motion and dismiss its petition with prejudice.[1]

### The Ongoing (since December, 2014) Singapore Litigation About Arbitration

On December 10, 2014, BPS arrested the vessel XIN CHANG SHU ("Vessel") in proceedings before the High Court of the Republic of Singapore (the "High Court") (Case No. 239 of 2014). BPS asserted its claims as the unpaid supplier of USD 1,768,000 of bunkers (marine fuel) to the Vessel. As owners of the Vessel, CSCL on December 12, 2014 deposited cash security of USD 2,600,000 with the High Court, and the Vessel was released.

---

[1] BPS is complying with this Court's Order by submitting this response but specifically denies this Court has jurisdiction over it and/or the dispute underlying CSCL's Petition.

The proceedings between BPS and CSCL continue before the High Court, including, on the issue of arbitration.  On December 14, 2014, BPS demanded arbitration[2] but CSCL not only refused to participate (including refusing to defend before an arbitral panel that there was no agreement to arbitrate) but vigorously attempted to disrupt any BPS effort to form the arbitral panel.[3]  On December 15, 2014, BPS sought a stay of the Singapore litigation pending arbitration, and the issue of whether there should be arbitration (and the Singapore case stayed pending the arbitration) has, since December 15, 2015 (some 15 weeks before CSCL sought injunction, here) been before the High Court.

CSCL challenged the arrest in the High Court on or about December 26, 2014, arguing, *inter alia*, that there was no valid agreement to arbitrate as between CSCL and BPS.  Both CSCL and BPS briefed their positions to the High Court and the Court held argument on March 6, 2015.  The High Court on March 24, 2015 heard  further argument and decision, including on the stay pending arbitration, is pending.

Even though CSCL and BPS are both before the High Court – CSCL having argued in Singapore what it argues here - CSCL now seeks to circumvent the High Court with an

---

[2]     A copy of BPS' arbitral demand, as served on and received by CSCL, is Exhibit 16 to the Qiao Declaration, submitted by CSCL.

[3]     CSCL goes on to copy and paste into its opening memorandum, the emails between BPS and CSCL counsel, and potential (and finally, accepting) arbitrators, vividly illustrating to this Court, if anything, of CSCL's absolute insistence that it is not bound and cannot be bound by any arbitral panel decision.

CSCL also shows this Court how when it was and is before the High Court of Singapore insisting that there be no arbitration, it at the same time worked steadily to undermine and delay any arbitration that the Singapore Court might enforce.

CSCL's recount of the difficulty that it attempted to bring to BPS to begin arbitration does not seem to serve CSCL here.

injunction from this Court.[4]  The parties' dispute is centered in Singapore; this District is

unrelated to the dispute (and, all of the arbitrators are in California).[5]  Nevertheless, here, as in

Singapore, CSCL insists that it is entitled to relief because, it says, there was no agreement

(express, implied or apparent) between the parties to arbitrate any disputes.  It is clear that

CSCL, fearing the High Court will order arbitration (where the arbitrators will decide whether

the arbitral agreement applies), is now trying to convince this Court to agree to a collateral attack

on the dispute already thoroughly briefed and argued before the High Court of Singapore.

Fundamentally, however, this Court has no jurisdiction to order what CSCL is

demanding, even if this Court somehow otherwise would decide that CSCL's collateral attack on

the High Court proceedings, is proper.  This Court now should deny CSCL's motion.

I.      **This Court Has No Jurisdiction Over This Matter.**

At the outset, it is important to note that this Court has no connection with either the

underlying subject matter or with BPS.  BPS is a Dubai corporation with no contacts, presence,

---

[4]      CSCL does not point out to the Court that the Supreme Court in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) abrogated in substantial part the *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995) opinion, with which CSCL leads off its brief and then relies on substantially.

*Thomson-CSF* relied on federal law, however, the Supreme Court in *Arthur Andersen* held that state and <u>not</u> federal law applies to the issue of whether a non-signatory can be bound by, or compel arbitration under, an arbitration agreement.

Most all of the opinions CSCL cites relating to arbitration pre-date 2009 (and the Supreme Court's *Arthur Anderson* decision).

[5]      The arbitration agreement provides that the Rules of the Society of Maritime Arbitrators, Inc., New York (copy of Rules at, http://www.smany.org/doc1-arbitrationRules.html ) control the arbitral proceedings.  The Rules provide that the arbitration may take place in a location as decided by the parties.  CSCL having refused to participate in the arbitration in any location, BPS elected to have the arbitration proceed in California, where the three (3) arbitrators each have their offices.  CSCL cannot insist that the arbitration have a New York connection, when it has refused to participate in the arbitration (except, that is, to try to disrupt it).

or registered agent in this District (or anywhere in the State of New York).[6]  There is no personal

jurisdiction over BPS in this District.  CSCL advertises ocean freight service to and from New

York, but this is only part of a cooperative pool of ocean carriers; it does not sail its vessels to

New York (its U.S. offices are in Montvale, New Jersey, Georgia, and California).[7]  The main

CSCL "connection" to this District is its counsel.  The arbitration proceedings which CSCL

seeks to enjoin (while simultaneously insisting it will not participate in them) are occurring in

California.

This Court also lacks subject matter jurisdiction over CSCL's petition.  The purported

basis for this Court's subject matter jurisdiction is supposedly found in 9 U.S.C. §§ 3 and 4 (the

Federal Arbitration Act) – even though nothing in the text of either § 3 or § 4 can be read to

confer subject matter jurisdiction here:

> **9 U.S.C. § 3 ("Stay of proceedings where issue therein referable to arbitration")**
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
>
> **9 U.S.C. § 4 ("Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination")**
>
> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district

---

[6]   BPS "appears" here on a limited basis only to contest jurisdiction and does not otherwise voluntarily submit to this Court's jurisdiction.  BPS has not been served with process and its undersigned counsel are not authorized to accept service of process.

[7]   *See* http://www.jocsailings.com/CarrierDirectory/CarrierDetail.aspx?CID=2714

court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.   .    .    .    .

The plain text of § 3 permits a court **in which a "suit or proceeding" is already pending** to stay that "suit or proceeding" in favor of an arbitration proceeding.  CSCL's jurisdictional allegation is fatally flawed for two reasons – first, there is no "suit or proceeding" already pending in this Court, and second, CSCL does not seek to "stay the trial of the action" pending arbitration.  Nothing in the text of § 3 provides support for CSCL's instant petition.

Likewise, CSCL's reliance on § 4 completely misses the mark as the plain text of that section only allows a "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to seek relief from a court in the form of an "order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Yet it is CSCL – not BPS – which has refused to participate in arbitration, and the relief sought by CSCL here is wholly contradictory to the relief provided for in § 4.

As a fall-back, CSCL also attempts jurisdiction under Fed. R. Civ. P. 9(h) and 28 U.S.C. § 1333 by alleging that "[t]his also is an admiralty and maritime claim."  Again, however, BPS is not present in this District and is not amenable to service in this District.  This Court has no *in personam* jurisdiction over BPS.  There is no *res* in this District to support any *in rem* jurisdiction (the res – CSCL's cash deposit – is in the registry of the High Court of Singapore).  CSCL asserts no factual basis to underpin is conclusory statement that this is an admiralty and maritime claim.  No claim is stated for a maritime tort.  No claim is stated for the breach of a maritime contract (and in fact CSCL vehemently denies that it has any contractual or other relations with BPS).  CSCL's petition for injunctive relief and claim of supposed "irreparable" harm from arbitration is not a maritime claim.  It is a claim, or request, for land-based relief from

some supposed land-based wrong, not unique to ships, the sea, nor a matter of maritime commerce.  It is not within this Court's admiralty and maritime jurisdiction.

Also fatal to CSCL's petition is the lack of venue in this District.  CSCL alleges that "[v]enue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district."  CSCL makes no attempt to support this conclusory statement, either.  The underlying dispute is between a Chinese company (CSCL) and a Dubai company (BPS), over the Vessel arrested in Singapore, with funds deposited in Singapore, in an amount to secure a claim for bunkers provided to the Vessel in Russia.  CSCL has not identified a single event or omission which occurred in this District and which gives rise to its petition.  In fact, no substantial part of the events or omissions giving rise to this claim occurred in this District and no property subject to the claim is in this District (28 U.S.C. § 1391(b)(2)).  BPS is not subject to this Court's personal jurisdiction (28 U.S.C. § 1391(b)(3)).

The proper court venue for the dispute is Singapore, before the High Court there, and where the parties have been since BPS in December, 2014 arrested the Vessel in Singapore.  This Court should deny the petition for this further reason of improper venue, where CSCL already has appeared and argued in the proper Singapore venue.

**II.**     **CSCL cannot show it will be irreparably or immediately harmed if ordered to arbitrate.**

Even if CSCL could establish that this Court has both *in personam* jurisdiction over BPS and subject matter jurisdiction over the dispute (which CSCL cannot and which this Court does not), **and** that venue is proper in this District (which it is not), CSCL is faced with the fact that it has already made the same arguments to the High Court, a court with unquestioned personal jurisdiction over the parties and the subject matter.

If the High Court decides that the dispute is not arbitrable, CSCL will suffer no irreparable harm because it will not be forced to arbitrate.  On the other hand, if the High Court rules that the dispute between CSCL and BPS is arbitrable, then CSCL's argument that it will be irreparably harmed by being required to arbitrate (a claim also already inherent in CSCL's argument to the High Court) fails because the High Court will have found (over CSCL's argument) that there is at least a prima facie agreement to arbitrate.

Similarly, there is no "immediate" danger of irreparable harm (if there could be any harm that is "irreparable").  The schedule that the arbitral panel issued, March 4, 2015 (Exhibit A hereto; the arbitral panel contemporaneously provided both to BPS, and CSCL counsel here, a copy of this schedule IS Exhibit A hereto) states in pertinent part as follows:

### 3. Does this panel determine CSCL's amenability to arbitration?

Claimant contends this panel determines that issue. The panel directs the parties to submit briefs on two issues no later than April 2, 2015, a date the panel may postpone if the Singapore court has not by then issued an order. The issues are:

(i)      Who decides respondents' amenability to arbitration – this panel? A court?
(ii)     If this panel decides, are respondents bound to arbitrate?

The panel indicated a desire to hear from respondents on these issues. Mr. Simms agreed and the panel now orders that respondents may submit a brief without waiving any right or defense they may have, including their right to contend they have not agreed to arbitrate with claimant.

Consequently, the parties are not to submit briefs until over a week from now (April 2nd); the panel is awaiting the Singapore High Court's Order on arbitration, in the meantime (and the panel may postpone the April 2nd date if the Order has not issued), and even with that, BPS has made clear, as the schedule confirms, that CSCL may brief before the arbitral panel the issue of arbitrability, without waiving the right later to contend that CSCL never agreed to arbitrate.

The arbitration poses no harm to CSCL at all – particularly given this provision by BPS – much less, "immediate" or "substantial" or "irreparable" harm.

CSCL overlooks that underlying the very Federal Arbitration Act it (mis-) cites as its supposed jurisdictional basis for injunction here, is:

> [t]he Act's centerpiece provision [which ] makes a written agreement to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. . . .

> > "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

> *Moses H. Cone Memorial Hospital*, 460 U.S., at 24-25. *See, e. g., Steelworkers v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582-583 (1960). Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.

> * * *

> As in *Scherk v. Alberto-Culver Co*., 417 U.S. 506 (1974), we conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625-26; 629 (1985).

As noted above of course, CSCL does not seek to compel arbitration (that is the issue before the High Court of Singapore, by BPS), but international comity and the Supreme Court's requirement of "generous[ ] constru[ction]" of intentions of arbitrability are intertwined, forefront principles here. Fundamentally, this Court should not countenance CSCL's attempt to have this Court interfere with the decision of the High Court of Singapore, again, before which

8

both parties have appeared (and which undisputedly has jurisdiction over both parties) to argue the same issues as CSCL presses here.

## **Conclusion**

This Court accordingly now should deny CSCL's petition and dismiss it with prejudice.

Dated:  March 24, 2015.

Respectfully Submitted,

/s/ J. Stephen Simms
J. Stephen Simms
 (*pro hac* motion to be filed)
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
410-783-5795
jssimms@simmsshowers.com

Big Port Counsel (Appearing Specially, without admission of personal jurisdiction over Big Port)

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2015 I caused the foregoing to be filed on the Court's CM/ECF system for service on all record counsel.

/s/ J. Stephen Simms